UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>SKY T. KRUSE and<br>VICTORIA L. KRUSE,<br><br>Debtors. | Case No. 26-10393-CMA<br><br>Adv. No. |
| DARRYL YUST,<br><br>Plaintiff,<br><br>v.<br><br>SKY T. KRUSE; and VICTORIA L. KRUSE,<br><br>Defendants. | COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §523(a)(2)(A) AND OBJECTING TO DISCHARGE UNDER 11 U.S.C. §727 |

Plaintiff Darryl Yust ("Plaintiff"), by and through his undersigned counsel, Ramsaur Law P.C., alleges for his *Complaint to Determine Dischargeability of Debt Under 11 U.S.C. § 523(a)(2)(A) and Objecting to Discharge Under 11 U.S.C. §* 727 (the "Complaint") against debtors and defendants Sky T. Kruse ("Sky") and Victoria L. Kruse ("Victoria" and collectively, the "Defendants") as follows:

**PARTIES**

1. Plaintiff is an individual residing in King County, Washington. Plaintiff is a creditor of Defendants.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

2. Plaintiff is informed and believes, and thereupon alleges, that Defendants are, and at all times relevant herein were, individuals residing, doing business and working in King County, Washington, and the chapter[1] 7 debtors herein, as indicated in their bankruptcy petition. Plaintiff is further informed and believes that Defendants are a lawfully married couple.

## JURISDICTION AND VENUE

3. This is an action to determine the dischargeability of debt under section 523(a)(2)(A) and to object to the Defendants' discharge under section 727(a), and is brought as an adversary proceeding in accordance with Rules 4007 and 7001.

4. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and 28 U.S.C. § 157(b)(2)(J).

5. The Court has jurisdiction under 28 U.S.C. §1334 and 157.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## FACTUAL BACKGROUND

### A. The underlying transaction and loan agreement (i.e., the origin of Sky's tortious/fraudulent conduct)

7. In 2014, Sky approached Plaintiff regarding a business opportunity in which Plaintiff would loan funds to Sky and his wholly owned company (i.e., Global Investment Leadership Capital, LLC ("GILC")) for the purpose of closing a separate business deal.

8. Accordingly, in October 2014, Plaintiff and Sky (and his wholly owned company) entered into a short-term bridge loan agreement whereby Plaintiff would loan such funds in exchange for repayment pursuant to the terms of the agreement.

9. Securing the loan was a material term for Plaintiff to lend funds and, to that end, Sky and his company explicitly agreed and promised to secure such loan by pledging sufficient security—which pledge was made specifically to induce Plaintiff to make the loan.

---

[1] Unless otherwise indicated, all "Code," "chapter," and "section" references are to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP") which make applicable certain Federal Rules of Civil Procedure ("FRCP").



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

10. To that end, Sky and his company pledged certain security to collateralize the loan, including without limitation a senior claim to a trade transaction fee, a secondary claim against business property and cash flows, and a secondary claim against a separate trade transaction fee.

**B. <u>Plaintiff discovers Sky's tortious/fraudulent conduct</u>**

11. Sky and his company did not make a single payment on the loan and failed to pay the loan amount in full on its original maturity date. To continue the fraud, Sky and his company executed two loan amendments with Plaintiff, which delayed the maturity date of the loan to sometime in 2019.

12. Sky and his company still did not make a single payment on the loan and failed to pay the loan amount in full on the extended maturity date.

13. In addition to Sky's false promises of payment, Plaintiff also discovered that the pledged security for the loan was likewise a product of false representations, false pretenses and fraud.

14. To date, Sky has never made a single payment to Plaintiff on the underlying loan and has never turned over and/or surrendered any of the collateral pledged to secure the initial loan.

15. Simply stated, Sky fraudulently induced Plaintiff to extend the loan based on numerous false promises of repayment and false representations regarding pledges of valuable security that either did not exist and/or were retained and/or redirected away from Plaintiff.

16. Sky's false promises, false representations, false pretenses and fraud are not hyperbole. Sky never intended to pay the loan and continued the charade of fraudulent conduct even after Plaintiff learned the truth. In numerous communications between the parties during this time, Sky repeatedly reiterated false assurances of forthcoming payment (literally no payment was ever made) and even attempted to deceive Plaintiff into waiving his rights to recourse under the law (i.e., not suing him) in exchange for nothing more than further false promises, without any payment or provision of adequate security.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

17. Plaintiff desired security for the loan—which was a material, and critical, term to the entire transaction. Had Plaintiff known that Sky and his company had no intention of repaying the loan, no intention of providing adequate security, no intention of turning over any such collateral to pay back the loan and otherwise no intention of performing under the terms therein, Plaintiff would never have made the loan.

C. **The state court lawsuit and resulting judgment(s); Sky's continued tortious/fraudulent conduct**

18. In August 2020, Plaintiff sued Sky and GILC in King County Superior Court, Case No. 20-2-13021-4 SEA (the "Lawsuit"), which complaint alleged numerous causes of action, including without limitation, fraud, conversion, and unjust enrichment.

19. Plaintiff successfully obtained a money judgment against Sky in June 2021 in the approximate amount of $1.7 million (the "Judgment"). For purposes of this Complaint, "Judgment" includes the June 2021 judgment, subsequent amendments, supplemental judgments, accrued interest, attorney fees, costs, and related obligations owed to Plaintiff.

20. To avoid immediate enforcement of the Judgment, Sky entered into an abatement agreement pursuant to which Plaintiff agreed to forbear from immediate execution and other collection remedies on the Judgment in exchange for, among other things, Sky's collateralization of the debt with valuable property and Sky's promise that he would not further alienate, sell, or encumber any collateral without Plaintiff's prior written consent.

21. In the negotiations and execution of the abatement agreement, Sky offered his primary residence (the "Property") and 1,500,000 shares of privately held stock in AppLixir as collateral. He represented to Plaintiff that this AppLixir stock had a present-day value of $4.5M–$7.5M. After the agreement, Sky made materially similar representations, including stating in open court that the AppLixir stock was worth at least $6,000,000 and executing multiple receivership schedules claiming a Book Value of $7,500,000 (discussed in more detail below).

22. Sky's representation of the value of his AppLixir stock was false. The available evidence indicates that the AppLixir stock was worth far less than Sky represented, and Plaintiff



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

is unaware of any third-party valuation, offer, or transaction supporting the multi-million-dollar value represented. Sky additionally refused to grant Plaintiff the promised lien on the AppLixir stock—which Plaintiff only obtained via Court order years later. Sky likewise refused to grant Plaintiff a consensual lien on the Property (which relegated Plaintiff to being behind his homestead exemption in priority, substantially impairing the Property's utility as collateral). And Sky refused to grant Plaintiff any additional security to collateralize payment of the Judgment.

23. Sky also falsely promised he would not further alienate, sell, encumber, or otherwise impair collateral without Plaintiff's prior written consent. Subsequently, Defendants recorded or executed instruments affecting the ownership, control, transfer, or encumbrance status of the Property, including the recordation of a Community Property Agreement, an Assignment for the Benefit of Creditors, and a consensual lien in favor of insiders (Victoria's parents), contrary to Sky's written promise.

24. These representations induced Plaintiff to forbear from immediate enforcement. Plaintiff entered into the agreement and refrained from immediate execution, garnishment, and other available collection remedies in actual reliance on these representations. This reliance was based on Sky's representations at the time of the agreement regarding asset value, the Property's availability as collateral, and intent to provide and preserve collateral.

25. Following execution of the agreement, Sky continued to make representations regarding his asset values and repayment prospects, which Plaintiff relied upon in continuing to delay enforcement of the Judgment.

26. These later representations and omissions further induced Plaintiff's continued forbearance from enforcement. Had Plaintiff known the true value of the AppLixir stock, the extent of insider liabilities, and Defendants' intent to further encumber the collateral offered, Plaintiff would not have agreed to forbear and would have immediately pursued collection remedies under the Judgment.

27. Simply stated, at the time of entering into the agreement, Sky had not secured Plaintiff's interest in the Property (and never did), did not subsequently grant or perfect such



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

security, later encumbered the Property in favor of insiders, and failed to provide any evidence of a viable means to monetize the AppLixir stock for any value whatsoever. These facts support a strong inference that, at the time he made those promises, Sky did not intend to perform his obligations at all.

## D. The assignment for the benefit of creditors and the sham receivership; Sky's continued tortious conduct

28. On July 20, 2022, Sky executed an Assignment for the Benefit of Creditors, and Victoria executed a written, notarized consent to the Assignment for the Benefit of Creditors. This was yet another violation of Sky's abatement agreement promises to not assign and/or alienate any collateral.

29. In connection with the ABC, Sky initiated a receivership proceeding in King County Superior Court, Case No. 22-2-17200-2 SEA, in which he sought to have the assignee appointed as the general receiver.

30. In his receivership schedules, Sky testified that he owned, among other assets, his primary residence (valued at $1,548,100—which value was then reduced to $1,446,000 in amended schedules), 1,500,000 shares of "AppLixir Stock" valued at $7.5 million and a nominal retirement account at Sound Credit Union (in the approximate amount of $2,000). Sky testified that two creditors (i.e., mortgage lenders) held secured claims in the amount of $487,179 (in favor of PHH Mortgage on a first deed of trust) and $225,715 (in favor of Sound Credit Union on a second deed of trust).

31. Specifically, as to the AppLixir stock in the receivership, Sky executed ***three*** versions of such schedules under penalty of perjury: (i) July 19, 2022 – $7,500,000 Book Value; (ii) October 18, 2022 – $7,500,000 Book Value reaffirmed; and (iii) October 20, 2022 – value changed to "Unknown." No explanation was provided for the abrupt reversal, supporting an inference that the prior valuations were knowingly false.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

32. As to the mortgage balances, Sky testified that such balances were materially higher than actual balances shown in contemporaneous PHH statements. This overstatement materially understated the equity in the Property.

33. The magnitude of this overstatement was sufficient to materially affect Plaintiff's assessment of recoverable equity and to create the appearance that little or no equity would remain available in the Property upon execution.

34. Plaintiff relied on these representations regarding mortgage balance and Property equity in assessing the viability of execution against the Property and in continuing to forbear enforcement.

35. These representations were false, and the magnitude and consistency of the discrepancies support an inference that they were not the result of mistake but were made with knowledge of their falsity or reckless disregard for the truth, and with knowledge that such misstatements were substantially certain to impair Plaintiff's ability to recover on the Judgments.

36. Together, these distortions misrepresented both assets and liabilities and contributed to a materially misleading depiction of available equity in the Property.

**E. Defendants' bankruptcy filing**

37. Defendants filed their joint voluntary chapter 7 petition on February 6, 2026. Before filing, Sky had fraudulently induced Plaintiff to make the initial 2014 loan and later to forbear from enforcing the resulting Judgment through the misrepresentations, false pretenses, false promises, and omissions described above. Defendants also participated in efforts to encumber, transfer, assign, or dispose of collateral promised or represented as available to repay the Judgment, including the assignment of assets for purposes of initiating a sham receivership. Upon information and belief, Victoria knew of Plaintiff's claims and the promised collateral, approved or participated in transactions affecting the Property and household finances, and benefited from Plaintiff's continued forbearance, including through Defendants' continued use and occupancy of the Property.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

38. In Schedule A, Defendants list ownership of their primary residence with a value of $1.6 million, 1,500,000 shares of AppLixir Stock with a value of "unknown," and approximately $1.6 million in retirement accounts, including without limitation $1,127,970.87 in a 401(k) held with Fidelity Investments related to Microsoft Corporation. Sky did not list any of the retirement accounts, except for the nominal $2,000 account held at Sound Credit Union, in his receivership schedules.

39. In Schedule D, Defendants list David and Carolyn Hamilton (Victoria's parents) as holding a secured claim against their primary residence in the amount of $100,000.

40. In Schedule F, Defendants list Plaintiff as holding an unsecured claim in the amount of $2,829,979.32, the Hamiltons holding an unsecured claim in the amount of $309,403.91 and Karol Kruse (Sky's mother) holding an unsecured claim in the amount of $896,450.

41. As to the Hamilton secured claim, on April 2–3, 2025, less than one year prior to filing for bankruptcy, Defendants executed a $100,000 promissory note and deed of trust in favor of insiders David and Carolyn Hamilton (the "Transaction"). This debt includes the following features: no installment payments; no default or late interest; maturity approximately ten years after execution; repayment limited to non-exempt equity; foreclosure characterized as a forced sale for homestead purposes.

42. The Transaction created an insider lien affecting the structure of claims against the Property and formed part of the overall course of conduct relevant to Defendants' representations regarding preservation of collateral. The Transaction occurred after entry of judgment, while Defendants were insolvent, during ongoing collection efforts, and with knowledge of creditor priority mechanics.

43. The Transaction was inconsistent with Sky's prior representations that he would not further encumber the property without Plaintiff's consent.

///

///



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

**F. Defendants' failure to keep and preserve information from which their financial condition and business transactions might be ascertained**

44. Defendants received recurring financial transfers from Karol Kruse over multiple years. These funds were used for HELOC payments and ordinary living expenses. Defendants characterize these transfers as a "loan" justifying the $896,450 unsecured debt to Karol Kruse.

45. With respect to the alleged debt to Karol Kruse, Defendants have produced a promissory note dated November 6, 2022 and a subsequent amendment dated January 16, 2026. However, Defendants have no contemporaneous records for the underlying transfers, including any accounting records reflecting how such amounts were calculated, tracked, or reconciled over time, or any accounting tying individual transfers to the reported loan balance. Bank records itemizing transfers from Karol Kruse do not reconcile with the reported increase in the alleged Karol Kruse loan balance over certain periods. Defendants have not produced records explaining the discrepancy, including whether portions of the transfers were excluded, repaid, offset, forgiven, or otherwise accounted for.

46. The November 6, 2022 promissory note was executed years after the recurring transfers began and therefore was not contemporaneous with the inception of the alleged loan relationship or the early transfers it purported to aggregate. Its late execution reflects a retroactive characterization of those prior transfers.

47. The structure and treatment of these transfers—including their regularity, use for ordinary living expenses, absence of regular repayment, absence of periodic payment obligations, and aggregate post hoc documentation—are inconsistent with ordinary arm's-length lending and with Defendants' presentation of the transfers as conventional loan obligations.

48. Regardless of characterization, these funds constituted a material and recurring source of financial support available to Defendants, the omission or mischaracterization of which created a materially misleading picture of Defendants' financial condition and available resources. These recurring transfers could bear on Sky's prior sworn representations that he had no income.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

49. At the section 341 meeting, Defendants admitted that: the transfers occurred over multiple years; amounts varied based on need; funds were used for living expenses; no clear repayment structure exists.

50. Given the magnitude, duration, and use of these transfers for ongoing household expenses, both Defendants knew or should have known of the existence and nature of such financial support.

51. Similarly, Defendants also list approximately $309,000 owed to the Hamiltons but have not produced documentation for this alleged loan, including promissory notes, repayment terms, interest provisions, or accounting records.

52. Defendants have not provided any explanation regarding the origin, structure, or calculation of this obligation, in contrast to the separately documented $100,000 Hamilton Transaction, which was supported by a promissory note, deed of trust, and identifiable use of proceeds.

53. In addition, Defendants failed to maintain records sufficient to establish the financial condition and business transactions of GILC, an entity through which Sky conducted business and incurred substantial obligations to Plaintiff.

54. Defendants have represented that GILC ceased operating as a going concern in or about June 2021.

55. Notwithstanding any cessation of operations, Defendants were required to maintain records sufficient to explain GILC's financial condition, including its assets, liabilities, and the disposition of any value existing prior to cessation.

56. Following the March 19, 2021, 30(b)(6) deposition of GILC, Sky produced a list of GILC creditors showing funds intake totaling $3,385,000. Despite repeated requests, no explanation has ever been provided for what happened to these funds and no records have been produced sufficient to trace, account for, or reconcile the disposition of this substantial capital, which would reasonably be expected to generate corresponding financial records.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

57. During this same examination, Sky made demonstrably false statements regarding consultation with Hugo Delgado to prepare for GILC's Judgment Debtor Exam and his involvement in the business activities of GILC, implicating an innocent third party.

58. During that examination, Sky stated that "GILC has never made any money at all," a claim also directly refuted by Mr. Delgado's sworn testimony and evidence.

59. The only subsequent records produced regarding GILC consist of limited bank account history reflecting minimal activity, including nominal deposits and recurring inactivity fees, with no information sufficient to reconstruct GILC's financial condition or the disposition of its assets.

60. Defendants have admitted that additional business records are not available.

61. These deficiencies are consistent with Defendants' broader failure to maintain records sufficient to permit reconstruction of their financial condition, including the inability to account for the disposition of millions of dollars in GILC-related funds.

62. These were not isolated errors but part of a repeated and coordinated course of conduct through which Defendants presented a materially misleading financial condition to Plaintiff over time, demonstrating a deliberate intent to deceive Plaintiff regarding Defendants' financial condition and available assets, and continuing within this bankruptcy case.

63. The foregoing conduct reflects a pattern of incomplete, inconsistent, and misleading financial disclosures that frustrates the ability of creditors and the Trustee to accurately assess Defendants' financial condition.

64. Plaintiff continues to investigate third-party relationships, transactions, and communications that may bear on Defendants' financial condition, sources of funds, asset disposition, recordkeeping, bankruptcy disclosures, or entitlement to discharge.

### G. <u>Defendants' failure to satisfactorily explain the loss of asset value</u>

65. Sky previously represented under oath that his AppLixir stock had multi-million-dollar value, including valuations up to $7,500,000.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

66. In the bankruptcy schedules, Defendants now value the AppLixir stock as "unknown." Defendants have not provided a satisfactory explanation for the discrepancy between prior sworn valuations and current disclosures.

67. Plaintiff is unaware of any intervening event, transaction, or change in AppLixir's condition that would reasonably account for the disappearance of previously asserted multi-million-dollar value.

68. Sky has failed to produce documentation establishing the nature, ownership structure, marketability, or realizable market value of the stock.

69. The unexplained disappearance, loss, or deficiency of this asserted asset value constitutes a loss of assets or deficiency of assets for which Defendants have failed to provide a satisfactory explanation, independently supporting denial of discharge under section 727(a)(5).

70. Defendants have also failed to satisfactorily explain the disposition, treatment, and accounting of substantial insider transfers and alleged insider obligations, including the Karol Kruse transfers and scheduled debt, the Hamilton secured transaction, and the separate scheduled Hamilton unsecured debt.

**FIRST CAUSE OF ACTION**

**(Objection to Discharge of Particular Debt – False Pretenses, False Representation or Actual Fraud -- 11 U.S.C. § 523(a)(2)(A))**

71. Plaintiff realleges and incorporates by reference paragraphs 1 through 70 of this complaint as though fully set forth herein.

72. Under section 523(a)(2)(A), an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition." 11 U.S.C. § 523(a)(2)(A). This also includes false promises and fraudulent inducement.

73. Sky Kruse made false representations, false promises and omissions regarding existing facts, including: his ownership and the encumbrance status of the Property; the value of



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

his AppLixir stock and its suitability as collateral; his intent to provide and preserve collateral securing the Judgment; and his intent not to further encumber or transfer such collateral without consent.

74. Sky's representations and promises were false when made.

75. Sky, through false representations, false pretenses, false promises and fraud, acted to induce Plaintiff to make the initial loan, enter the abatement agreement, and induce Plaintiff's continued forbearance from enforcement of the Judgment.

76. In the absence of Sky's false representations and promises, false pretenses and actual fraud, Plaintiff would not have agreed to make the loan, enter the abatement agreement, or take valueless and/or illusory collateral to forbear from exercising remedies.

77. Sky knew his representations and promises regarding the pledge of collateral were false and had no intention of honoring the contractual obligations to Plaintiff.

78. Plaintiff relied on these representations, false promises and fraudulent conduct and such reliance was justified and reasonable. Plaintiff was unaware that Sky's representations and promises were false when made.

79. As a direct and proximate result of his reliance on Sky's false representations, false promises and fraud, Plaintiff has suffered damages in the amount of the Judgment (approx. $2.8 million currently) plus all accruing interest, attorneys' fees and costs.

80. Based on the foregoing and pursuant to section 523(a)(2)(A), Defendants should not be granted a discharge of this debt owed to Plaintiff in the principal amount of no less than $2,829,979.32 (in a total specific amount to be proven at trial), accrued and accruing interest, court costs and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**

**(Objection to Discharge – 11 U.S.C. § 727(a)(3))**

81. Plaintiff realleges and incorporates by reference paragraphs 1 through 80 of this complaint as though fully set forth herein.



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

82. Under section 727(a)(3), the Court shall grant a debtor a discharge unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

83. Defendants have concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which Defendants' financial condition or business transactions might be ascertained. This includes, without limitation, information regarding the insider debts owed to the Hamiltons and Karol Kruse, and the financial condition and business transactions of GILC, a wholly owned entity through which Sky conducted business, and all information related to the value of the AppLixir stock.

84. Defendants' act(s) or failure to act was not justified under the circumstances of the case.

85. Based on the foregoing and pursuant to section 727(a)(3), Defendants should not be granted a discharge in this bankruptcy case.

**THIRD CAUSE OF ACTION**

**(Objection to Discharge – 11 U.S.C. § 727(a)(5))**

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 85 of this complaint as though fully set forth herein.

87. Under section 727(a)(5), the Court shall grant a debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

88. Sky previously represented, in many contexts, including without limitation under oath, that the shares of AppLixir stock had multi-million-dollar value, including a valuation up to $7,500,000 (1,500,000 @ $5/share).



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

89. In their bankruptcy schedules, Defendants assert that the value of the AppLixir stock is "unknown" and have essentially intimated that the stock might be worthless. Defendants have not provided a satisfactory explanation for the discrepancy between prior sworn valuations (which allege an asset worth up to $7.5 million) and current disclosures.

90. Plaintiff is unaware of any intervening event, transaction, or change in AppLixir's condition that would reasonably account for the disappearance and/or loss of previously asserted multi-million-dollar value.

91. Defendants have also failed to satisfactorily explain the disposition, treatment, and accounting of the substantial insider transfers and alleged insider obligations described above.

92. Based on the foregoing and pursuant to section 727(a)(5), Defendants should not be granted a discharge in this bankruptcy case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

1. Determine that the full amount of the debt owed by Defendants to Plaintiff, including all amounts arising from the Judgment and any related obligations, in the amount of no less than $2,829,979.32, is a nondischargeable debt pursuant to 11 U.S.C. §523(a)(2)(A);

2. Determine that the Judgment and related obligations are enforceable against Defendants and/or their marital community to the fullest extent permitted by applicable nonbankruptcy law.

3. Denial of Defendants' discharge under 11 U.S.C. §§ 727(a)(3) and/or (5);

///

///

///



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230

4. Award Plaintiff costs and attorney's fees to the extent permitted by law; and

5. Grant such other and further relief to Plaintiff as the Court deems just and proper.

Dated: May 7, 2026

RAMSAUR LAW P.C.

/s/ Brett H. Ramsaur
Brett H. Ramsaur, WSBA #41980

Attorneys for Plaintiff Darryl Yust



RAMSAUR LAW P.C.
950 PACIFIC AVENUE, SUITE 1030
TACOMA, WA 98402
TEL: 253.720.4230